UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOB ROBLES,<br><br>        Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>        Defendant. | Case No.: 1:17-cv-00566-BAM<br><br>**ORDER REVERSING AGENCY'S DENIAL OF BENEFITS AND ORDERING REMAND** |

**INTRODUCTION**

Plaintiff Job Robles ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act.[1] The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.

Having considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence in

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 7, 8.)

1

the record as a whole and based upon proper legal standards. Accordingly, the ALJ's decision is REVERSED and the case REMANDED for further proceedings consistent with this order.

## FACTS AND PRIOR PROCEEDINGS

In July 2011, Plaintiff filed applications for disability insurance benefits and supplemental security income. AR 437-38, 439-47.[2] Plaintiff alleged that he became disabled in June 2009, due to bone necrosis of the ankle, cognitive difficulties since grade school, and that he was on methadone for pain. AR 497. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 228-31, 236-41. ALJ Evangelina P. Hernandez held a hearing on May 16, 2013, and the ALJ issued an order denying benefits on May 31, 2013. AR 14. Plaintiff appealed, and on October 9, 2014, the Appeals Council vacated the May 2013 decision and remanded the case to an administrative law judge. AR 14. Following remand, ALJ Hernandez held two hearings, and issued a second order denying benefits on September 27, 2016. AR 11-33, 74-84, 85-121. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 3-5, 10. This appeal followed.

**Relevant Hearing Testimony**

<u>November 24, 2015</u>

The ALJ held a hearing on November 24, 2015, in Stockton, California. AR 74-84. Plaintiff appeared by videoconference and was represented by his attorney, Amanda Foss. Impartial Vocational Expert Stephen Schmidt also appeared. AR 76. Following brief questioning, the ALJ elected to send Plaintiff for consultative orthopedic and psychological evaluations. AR 83.

<u>August 15, 2016</u>

The ALJ held a second hearing on August 15, 2016, in Oakland, California. AR 85-121. Plaintiff appeared with his attorney, Adrien Haddad. Impartial Vocational Expert Gerald Belchick also appeared. AR 87.

In response to questions from his attorney, Plaintiff testified that the primary reason he cannot work is due to pain in his right foot. Plaintiff injured his ankle in 2003, and he has received medical

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

treatment and surgery following the injury. The surgery did not help his pain, and on a typical day the pain is a 5 out of 10, even with medications. Certain things exacerbate the pain, such as sitting without elevating his fee, walking and standing. AR 88-90.

When asked about his medications, Plaintiff testified that he takes Vitamin D, methadone, high blood pressure medication and "nerve pills." AR 94. The medications cause dizziness and extreme drowsiness, and he takes three to four hour naps every day. AR 95-96. Plaintiff believed it was the methadone that made him drowsy. He had allergic reactions to other pain medicine, so he had to return to taking methadone. AR 102.

When asked about his personal care by the ALJ, Plaintiff testified that he has problems because he has trouble standing. He also no longer makes meals, helps his mother, takes out the garbage or takes public transportation. Additionally, he now has trouble getting along with people because of his condition. He has trouble thinking and an inability to concentrate. AR 96-99.

When asked about his abilities, Plaintiff testified that he can probably walk about twenty minutes before his foot starts to swell and he feels more pain. He has to stay off of his foot for at least two days before the swelling subsides. Plaintiff further testified that he has now developed a cyst in his left ankle because of the problem with his right foot. The cyst causes pain. He uses a cane for walking. AR 100-03.

Plaintiff also testified that he usually goes to the doctor once a month for pain medication refills. His new doctor also found that Plaintiff suffered from depression. Plaintiff testified that he suffers more depression than anxiety. Plaintiff's doctor stated that if Plaintiff were at work, he could still deal with and interact with supervisors, coworkers and the public, but would not be able to do a lot of detailed work, just simple one or two. Plaintiff believed this was fair, but also believed that it would be very difficult for him to take a bus and try to sustain a job because he cannot think straight and is always sleeping and dizzy. AR 104-06.

Another doctor said that Plaintiff should use his cane for long and uneven terrain. Plaintiff did not think that was fair because he needs his cane all the time. Plaintiff also did not agree that he could stand and walk for up to two hours in an eight-hour workday or that he could pick up 20 pounds. Plaintiff reported that even when walking with his cane, he will feel pain in his right foot and lose his balance.

He has fallen about five or six times in the last twelve months when walking without a cane. AR 106-07.

When asked about his ability to do a one or two step job sitting down, Plaintiff testified that he would need his leg to be elevated. If not elevated, then he would not be able to concentrate because of pain. He also would be sleepy and dizzy from the methadone. AR 108-09. Plaintiff further testified that he has trouble sleeping due to pain, which would affect his ability to think and concentrate. AR 109-10.

Plaintiff also testified that he had been seeing a psychologist, but she retired. Plaintiff was contacted about continuing his appointments with a psychologist, but he thought the weather was too hot for him to be out waiting for the bus. Plaintiff stated that extreme heat and extreme cold bring out pain in his ankle. AR 112.

Following Plaintiff's testimony, the ALJ elicited testimony from the Vocational Expert ("VE") Gerald Belchick. The VE testified that Plaintiff's past work was characterized as deli worker and restaurant worker. AR 113-14. The ALJ also asked the VE a series of hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume that someone like Plaintiff could do medium work. He could stand or walk four hours in an eight-hour workday before needing a ten-minute break, he could never climb ladders, ropes or scaffolds, but occasionally climb ramps or stairs and all other postural were occasional. He had to avoid concentrated exposure to extreme heat and concentrated exposure to extreme cold. His work would be limited to simple as defined in the DOT as SVP levels 1 and 2, routine and repetitive tasks. He would need to work in a low stress job defined as having only occasional decision-making and occasional changes in the work setting. The VE testified that this person could perform Plaintiff's past relevant work. He also could perform other medium jobs and light jobs. Examples at the light level include rental counter clerk, information clerk, and mail clerk. AR 114-16.

For the second hypothetical, the ALJ asked the VE about a person who could do medium work, could never climb ladders, ropes or scaffolds, occasionally could climb ramps or stairs, occasionally could balance, frequently could stoop, crouch, kneel and crawl. This person also had to work in jobs limited to simple as defined in the DOT as SVP levels 1 and 2, routine and repetitive, needed to work in a low stress job as defined as having only occasional decision making, only occasional changes in the

4

work setting, and had to avoid concentrated exposure to extreme heat. This person also could walk and stand for four hours. The VE testified that this was a sit-stand option, meaning that he could do his work while standing and while seated. The VE testified that there were jobs in the economy that this person could perform such as cashier II, but this person would not be able to perform Plaintiff's past work. AR 116-17.

For the third hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and work experience who could perform light work. He could stand or walk for four hours and sit for six hours, and would need a sit or stand option. He could never climb ladders, ropes, or scaffolds, occasionally could climb ramps or stairs, occasionally balance, and frequently could stop, crouch, kneel and crawl. He would need to avoid concentrated exposure to extreme cold and concentrated exposure to extreme heat. He would be limited to simple work as defined in the DOT as SVP levels 1 and 2, routine and repetitive and would need to work in a low stress job defined as having only occasional decision making, only occasional change in the work setting. The VE testified that this person could not perform Plaintiff's past work, but he could perform jobs called cashier II. AR 118-19.

Following the ALJ's questioning, Plaintiff's counsel inquired of the VE regarding the cashier II jobs. In response, the VE testified that there would not be an option for the hypothetical person to elevate one of their feet while sitting. If that person could not elevate the foot and would be off task for 15% of the time, the VE testified that the person would not be employable. If this person also needed any sort of unscheduled breaks, it would be an aberration and not used for an example. AR 119-20.

**Medical Record**

The relevant medical record was reviewed by the Court, and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 14-33. Specifically, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since June 24, 2009, his alleged onset date. Further, the ALJ identified personality disorder, history of ostechorndritis dessicans of the right ankle status post-surgery, degenerative joint disease of the right ankle, obesity, a somatoform

disorder, mild degenerative disc disease of the lumbar spine and affective disorder as severe impairments. AR 17-18. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 18-21. Based on her review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except he could stand for four hours and walk for two hours. He could stand or sit for thirty minutes at a time, and sit for three hours. He required the option to sit or stand alternatively at will, but would not experience being off task for more than five percent of the work period. He could never operate foot controls with the right foot and should never climb ladders, ropes or scaffolding. He could occasionally climb ramps and stairs, and occasionally balance. He could frequently stoop, crouch, kneel and crawl. He should avoid concentrated exposure to temperature extremes. He also retained the mental abilities and attitudes to engage in simple (SVP 1 and 2), routine and repetitive tasks. He also required a low stress occupation with at most occasional decision making or changes in the work setting. AR 21-31. With this RFC, the ALJ found that Plaintiff could not perform any past relevant work, but there were other jobs existing in significant numbers in the national economy that he could perform, such as cashier. AR 32-33. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 37.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant

is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Plaintiff identifies two alleged errors: (1) the VE testified in apparent conflict with the Dictionary of Occupational Titles ("DOT") with respect to the representative position of cashier; and (2) the ALJ failed to articulate specific and legitimate reasons for rejecting Plaintiff's credibility

**DISCUSSION**[3]

**A. VE Testimony**

At step five of the sequential evaluation, the ALJ assessed whether there were other jobs in the national economy that Plaintiff could perform based on his age, education, work experience and functional abilities. In response to a hypothetical question based on Plaintiff's age, education, work experience and RFC, the VE testified that such an individual would be able to perform the requirements of a representative unskilled, exertionally light occupation such as cashier (DICOT 211.462-010). AR 33, 118-19.

Plaintiff now asserts that the ALJ erred by failing to reconcile an apparent conflict between his RFC to perform simple, routine and repetitive tasks and the Level 3 Reasoning requirements of the

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

7

cashier job. Plaintiff is correct that there is an apparent conflict between his RFC limitation to simple, routine and repetitive work and the demands of Level 3 Reasoning required by the cashier position. *Zavalin v. Colvin*, 778 F.3d 842, 846-47 (9th Cir. 2015) (holding "there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning"). "When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Id.* at 846 (citing *Massachi v. Astrue*, 486 F.3d 1149, 1153–54 (9th Cir. 2007)). The ALJ must ask the expert to explain the conflict and "then determine whether the vocational expert's explanation for the conflict is reasonable" before relying on the expert's testimony to reach a disability determination. *Id.* Here, the ALJ did not ask the expert to explain why a person with Plaintiff's limitation to simple, routine and repetitive tasks could nevertheless meet the demands of Level 3 Reasoning. The ALJ's failure to inquire about the conflict is error.

Defendant contends that this error is harmless, noting that "[a]lthough Plaintiff did not finish high school, Plaintiff's treating psychiatrist Dr. Savage concluded that Plaintiff had the intellectual ability to achieve at the vocational college level and provided him with information about attending college and getting an educational grant," Plaintiff "had past experience performing reasoning level 2 work," and the medical record did not demonstrate that "Plaintiff has reduced reasoning capabilities that would prevent him from working as a cashier." (Doc. No. 18 at pp. 16-17.)

Defendant's argument is unavailing. Reasoning Level 3 in the context of cashier jobs means the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *See* CASHIER II, DICOT 211.462-010, 1991 WL 671840. According to the record, however, the ALJ gave great weight to the opinion of Dr. Les P. Kalman, the consultative psychiatric examiner, who determined in December 2015 that Plaintiff could understand, remember and carry out simple one and two-step job instructions, but had moderate limitations in the abilities to understand and remember complex instructions, carry out complex instructions, and to make judgments on complex work-related decision. AR 31, 941. Dr. Kalman also noted that Plaintiff's medical records included an

1  IQ of 90 (AR 937), Plaintiff's education was limited to 11th grade in special education (AR 938), and his mental limitations were based on a learning disorder, along with memory and focus issues (AR 941). Thus, Dr. Kalman apparently set simple, routine and repetitive tasks as the highest level of Plaintiff's ability. On this record, the Court cannot conclude that substantial evidence supports the ALJ's step-five finding that Plaintiff could perform the work of cashier, which requires Reasoning Level 3. *Massachi*, 486 F.3d at 1154. As a result, this case will be remanded so that the ALJ can address the conflict with the VE's testimony.

**B. The Court Declines to Address Plaintiff's Remaining Arguments**

Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

**C. Remand is Required**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the Court's discretion. *See Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). When no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id*. at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.*

Here, there are outstanding issues that must be resolved before a final determination can be made. Specifically, the ALJ's failure to inquire as to the conflict between the VE's testimony and the DOT was error. On remand, the ALJ must take the testimony of a VE to determine whether there are jobs in the national economy that Plaintiff is able to perform despite his mental limitations. Although the Court understands the importance of expediting disability claims; remanding this case for further

administrative proceedings will serve a useful purpose in the resolution of this case. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1401 (9th Cir. 1988). The Court therefore concludes that remand for further administrative proceedings is appropriate.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's disability determination warrants remand. Accordingly, the decision is REVERSED and the case REMANDED to the ALJ for further proceedings consistent with this decision. The Clerk of the Court is DIRECTED to enter judgment in favor of Plaintiff.

IT IS SO ORDERED.

Dated: __**September 20, 2018**__         /s/ *Barbara A. McAuliffe* _
                                          UNITED STATES MAGISTRATE JUDGE